UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IRONDINA OLIVEIRA           )
                           )
          Plaintiff,       )
                           )     Civil Action NO.
          v.               )     10-10218-DPW
                           )
MICHAEL J. ASTRUE          )
                           )
          Defendant.       )
                           )

MEMORANDUM AND ORDER
August 26, 2011

Plaintiff Irondina Oliveira ("Plaintiff") appeals the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for Supplemental Security Income ("SSI"). Principally because the Administrative Law Judge failed to address the Plaintiff's impairment with respect to "handling" and to consider fully the availability of jobs she can perform, I will remand the matter to the Commissioner for further consideration.

I.   BACKGROUND

**A.  *Medical History***

Plaintiff was born in 1965, Application Summary, A.R. 62, (Oct. 2, 2007), and has a history of pain and loss of function in her right arm, wrist and hand due to a work-related repetitive injury. Tr. Oral Hr'g Aug. 18, 2009, A.R. 19-20; Worker's Health Follow Up, A.R. 178 (July 21, 2005). She was last employed in 1998 as a machine operator. *Id.* According to her medical

history, the injury resulted from punching buttons repeatedly. *Id.*

Plaintiff had surgeries in 1998 and 1999 on the dorsum and radial aspect of her right wrist. *Id.*; A.R. 159. In 2004, she had surgery on her right elbow for cubital tunnel release and DeQuervain's thumb base release. A.R. 159. She has been treated by Dr. Richard C. Bird since before 2005, A.R. 178, through 2009, *see* A.R. 177-97.

In July of 2005, Plaintiff reported to Dr. Bird that she had decreased pain in her right elbow and less distal ulner numbness, but she did have post-operative numbness at an incision site from her 2004 elbow surgery. A.R. 178. She also reported pain in the dorsal lateral thumb, but less pain in the thumb base area. *Id.* On examination, flexion of the elbow reproduced numbness in her ulnar forearm and hand; the range of motion of her wrist was reduced; she had tenderness in her thumb, palm, and forearm; and she had persistent entrapment despite the cubital tunnel release. *Id.* Dr. Bird noted a diagnosis of chronic tendinopathy and DeQuervain's syndrome and recommended icing the thumb; he also observed that Plaintiff's ability to accomplish daily activities was reduced and characterized her as totally disabled. A.R. 178-79.

Dr. Bird examined Plaintiff again on October 20, 2005 and noted her complaints of pain in her elbow, wrist, palm, and

thumb. A.R. 180. Dr. Bird's notes further indicate that Plaintiff was able to cook and make her bed with assistance, put clothes in the laundry, and drive a car while experiencing pain. *Id.* Plaintiff was icing her arm twice daily and taking Sulindac, a non-steroidal anti-inflammatory drug ("NSAID"), once or twice a day. *Id.* Dr. Bird concluded that Plaintiff had chronic pain in the various areas of her right arm and hand from her repetitive injuries. *Id.* He expressed the opinion that Plaintiff was not able to work outside of limited activities of daily living and recommended continued icing and use of NSAIDs. *Id.*

During an examination by Dr. Bird in February of 2006, Plaintiff reported increased pain, particularly over her third digit, and aggravated pain in the right shoulder. A.R. 181. Her hand, forearm, and elbow also remained painful. *Id.* Dr. Bird reiterated his diagnosis of chronic tendinopathy and DeQuervain's syndrome and also noted synovitis. *Id.* He recommended continued icing and use of Sulindac and referred Plaintiff to Dr. Day, who had performed the 2004 elbow surgery. A.R. 181-82.

Plaintiff visited Dr. Day in early 2006, and he recommended steroidal injections if a trial of a new NSAID did not ease the pain. A.R. 182. In April of 2006, Dr. Bird noted that Plaintiff continued to have significant pain and difficulty with daily activities at home and that she frequently dropped items due to pain when attempting to grip. *Id.* Her right shoulder was

painful, although a recent MRI was negative for rotator cuff
tendinopathy. *Id.* Dr. Bird's examination revealed mild to
moderate tenderness in the right shoulder, hand, forearm and
thumb base. *Id.* The third digit was very tender, and there was
sensory loss at the ulnar forearm and hand. *Id.* Dr. Bird
recommended that Dr. Day perform the steroid injections and also
recommended continued icing and use of NSAIDs. *Id.* He further
noted that, although Dr. Day had suggested possible surgical
intervention, Plaintiff was hesitant due to her prior experiences
with surgery. *Id.* Finally, Dr. Bird opined that Plaintiff
"remains totally disabled from use of her upper extremities for
any repetitive or forceful work in any capacity." A.R. 183.

Plaintiff received steroidal injections in May of 2006, but
when Dr. Bird saw her on July 20, 2006, he noted that her
condition had not improved. A.R. 185. Dr. Day recommended
surgery, estimating a 60% chance of improvement, but Plaintiff
was "hesitant" because, although she had undergone several
surgeries and had experienced improved medial epicondyle, she
still experienced pain in her forearm, wrist, hand and thumb
base. *Id.* Dr. Bird encouraged Plaintiff to consider surgery and
recommended continued icing and use of NSAIDs. *Id.*

In November of 2006, Dr. Bird noted that the thumb base and
dorsal wrist were improved and only mildly painful, but that the
shoulder had increased in tenderness and the palm and third digit

4

were moderately tender.  A.R. 188.  He also found continued

sensory loss.  *Id.*  At that time, Plaintiff was taking only

ibuprofen (a non-prescription NSAID) to manage her pain.  *Id.*  In

February of 2007, Dr. Bird recommended that Plaintiff attempt to

decrease her use of ibuprofen because it was causing dyspepsia,

but in March Plaintiff reported worsening pain in her right hand

as a result.  A.R. 189-90.  Dr. Bird increased the recommended

dosage of Prilosec to treat the dyspepsia.  A.R. 190.  In January

2008, Dr. Bird noted that Plaintiff continued to suffer pain in

her right palm, hand and forearm even when not in use, that she

was not able to work in any capacity, and that she had right

shoulder tendinopathy.  A.R. 192

Dr. Stanley M. Leitzes performed a consultative physical

examination of Plaintiff on January 2, 2008.  A.R. 159-60.

Plaintiff reported pain in her wrist, elbow, and thumb, and Dr.

Leitzes observed that her grip strength in the right hand was

"considerably weaker when asked to grip the examiner's fingers."

A.R. 159-60.  He noted that her dorsiflexion on the right was

less than that on the left and that

> [h]er elbow range of motions is normal.  There is no
> pain on elbow range of motion.  Shoulder range is
> basically normal.  She complains of some pain above the
> 90 degrees.  Her main complaint is that of wrist pain.
> The patient's primary complaint of the hand seems to be
> at the metacarpal phalangeal joint of the thumb.  There
> is some swelling.  There is no pain or tenderness at
> the radial styloid.

A.R. 160.  Dr. Leitzes concluded that Plaintiff suffered from

tendinitis of the wrist and DeQuervain's syndrome affecting the thumb. *Id.* He also found that she had residual decreased sensation in the little and ring finger and "probably has degenerative changes at the metacarpal phalangeal joint of the thumb." *Id.*

In January of 2008, after Dr. Leitzes's examination, Dr. Barbara Scolnick reviewed Plaintiff's medical history and completed a Residual Functional Capacity ("RFC") Assessment for Massachusetts' Disability Determination Services. A.R. 161-68. Dr. Scolnick concluded that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for about six hours in an eight-hour workday, and had an unlimited ability to push or pull. A.R. 162. She also found that Plaintiff had limited ability to handle, finger or feel, noting that she could only occasionally pinch or grasp with the right hand. A.R. 164-65. Dr. Scolnick also found that concentrated exposure to extreme cold and vibration must be avoided. A.R. 164-65. She concluded that Plaintiff could perform only light work. A.R. 162. Also in January of 2008, a vocational analysis was performed by an examiner. A.R. 116-17 (Jan. 17, 2008). The analysis concluded that Plaintiff was capable of performing light work as a winder, electronics worker or encapsulator. *Id.*

In September of 2008, Dr. John Manuelian performed a second RFC Assessment based on Plaintiff's medical records. A.R. 169-

176.  He also found that Plaintiff could lift or carry twenty
pounds occasionally and ten pounds frequently and stand or walk
for six hours in a workday, but unlike Dr. Scolnick, he found
that Plaintiff was limited in her ability to push or pull.  A.R.
170.  Dr. Manuelian also found that Plaintiff had a weak grasp in
the right hand and limited ability to handle or feel, but he
indicated an unlimited ability to finger.  A.R. 172.  He found
that Plaintiff must avoid concentrated exposure to hazards, in
addition to extreme cold and vibration.  A.R. 173.  Finally, he
observed that Plaintiff had undergone multiple operations,
experienced pain in the right wrist and thumb, had "considerably
weakened" grip strength, and had decreased sensation in some
fingers in the right hand.  *Id.*  A.R. 171.

    In materials submitted with her application for SSI,
Plaintiff indicated that she was currently taking ibuprofen and
Naprosyn, a prescription NSAID, for her pain, Disability Report,
A.R. 84 (undated), although in another form she listed ibuprofen
as her only medication.  Questionnaire on Pain, A.R. 89 (Nov. 3.
2007).  She also indicated that she wore a brace on her wrist,
*id.* at A.R. 89, and that she was able to engage in very light
meal preparation, go outside once a day, drive a car, and shop
for food.  Function Report-Adult, A.R. 92-93 (Nov. 30, 2007).
She noted difficulty in dressing herself and caring for her hair.
*Id.* at A.R. 91.  A functional report prepared by Plaintiff

contains a number of options to select as "items that your illnesses, injuries, or conditions affect."  Although Plaintiff selected "lifting" and "reaching," she did not select "using hands" as an item affected.  *Id.* at A.R. 95.

At an oral hearing concerning her benefits, Plaintiff testified that her children assist her with cooking, housework and food shopping.  Tr. Oral Hr'g Aug. 18, 2009, A.R. 21-22.  She explained that she takes medicine three times a day and uses ice and Tiger Balm.  *Id.* at A.R. 24.  She also testified that she attends Cape Verdean feast days but cannot drive much due to difficulty holding up her hands.  A.R. 24-26.

## B. Procedural History

Plaintiff filed her application for SSI on October 2, 2007.[1] Application Summary for Supplemental Security Income, A.R. 62-70. In January of 2008, an initial determination was made that she was not disabled.  Disability Determination & Transmittal, A.R. 28 (Jan. 1, 2008).  Plaintiff requested reconsideration of the determination in April of 2008.  Request for Reconsideration, A.R. 38 (Apr. 15, 2008).  On reconsideration, the determination was again made that Plaintiff was not disabled.  Notice of

---

[1]  In her application, Plaintiff claimed a disability from February 21, 2006, Application Summary for Supplemental Security Income, A.R. 62, but an individual is not eligible to receive SSI benefits for the time period prior to filing an application.  42 U.S.C. § 1382(c); 20 C.F.R. §§ 416.305, 416.335.

Reconsideration, A.R. 39-41 (Sept. 4, 2008); Disability Determination & Transmittal, A.R. 29 (Sept. 4, 2008).

Plaintiff subsequently requested an oral hearing. Request for Hearing by Administrative Law Judge, A.R. 43 (Nov. 4, 2008). A hearing was held on August 18, 2009 before Administrative Law Judge Robert J. Kelly (the "ALJ").

In his decision in the Case of Irondina Elvora Oliveira, Office of Disability Adjudication & Review (Sept. 28, 2009) [hereinafter "ALJ Decision"]. The ALJ determined that Plaintiff's pain in the right wrist and elbow constituted a severe impairment. *Id.* at 3. However, he also found that Plaintiff had the RFC to perform light work, as defined in applicable regulations "except the pain in her hand precludes her from pushing or pulling." *Id.* 4. He also noted the following nonexertional limitations: "She is able to frequently balance, stoop, kneel, crouch, and crawl, occasionally climb ramps and stairs, ladders, ropes, and scaffolds" and is "limited in her ability to finger and feel with her right hand, and should avoid concentrated exposure to extreme cold, vibration, and hazards." *Id.*

The ALJ further found that Plaintiff was unable to perform her past relevant work, but concluded that jobs exist in significant numbers in the national economy that Plaintiff could perform. *Id.* at 6-7. As a result, he concluded that she was not

disabled under the Social Security Act.  *Id.* at 7.  The Decision
Review Board selected Plaintiff's claim for review but did not
complete its review within 90 days, and as a result, the ALJ's
decision became final.  Notice of Decision Review Board Action,
A.R. 1-3 (Jan. 11, 2010).

Plaintiff filed a timely complaint appealing the final
decision of the Social Security Administration.  Plaintiff
thereafter filed a motion to reverse the decision of the
Commissioner.  Dkt. No. 15.  Defendant has filed a motion for an
order affirming the decision.  Dkt. No. 20.

## II.  LEGAL FRAMEWORK

### A.  *Standard for Entitlement to SSI Benefits*

The issue on appeal is whether the Plaintiff is "disabled"
for purposes of the Social Security Act and is therefore eligible
for SSI benefits.  A "disability" is defined as an inability "to
engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be
expected to result in death or which has lasted or can be
expected to last for a continuous period" of at least twelve
months.  42 U.S.C. § 1382c(a)(3)(A).  An individual may only be
considered "under a disability" for purposes of receiving
benefits if "his physical or mental impairment or impairments are
of such severity that he is not only unable to do his previous
work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1381c(a)(3)(B).

The Commissioner has adopted a five-step analysis for determining whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). The determination of disability may be made at any point in the sequential evaluation process; if the Social Security Administration can conclude that an individual is or is not disabled at a step, the decision is made and it is not necessary to move to subsequent steps. *Id*.

Under the first step, if the individual is engaged in "substantial gainful activity," she is not disabled. *Id.* The second and third steps consider the severity of the alleged impairment. At the second step, if the Plaintiff does "not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement" the individual is not disabled. *Id.* At the third step, if the severe impairment meets or is equal to an impairment specifically listed in the regulations and satisfies the durational requirement, the individual is deemed disabled. *Id.* The fourth step involves the determination of the claimant's RFC. *Id.* If, given the determined RFC, the claimant is capable of performing his or her past relevant work, she is not disabled. *Id.* The

fifth step considers the RFC as well as the age, education and
work experience of the claimant to ascertain whether the claimant
can make an adjustment to other work; if an adjustment can be
made the individual is not disabled, and if an adjustment cannot
be made, the individual is disabled. *Id.* After an applicant
shows that she is unable to perform past relevant work under step
four of the analysis, the Commissioner must come forward with
evidence of the existence of specific jobs in the national
economy that the applicant would be able to perform. *See Seavey
v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001).

**B.** **Standard of Review of ALJ's Decision**

Judicial review of social security disability determinations
is authorized by the Social Security Act, 42 U.S.C. § 405(g),
which provides this court with the "power to enter, upon the
pleadings and transcript of the record, a judgment affirming,
modifying, or reversing the decision of the Commissioner of
Social Security, with or without remanding the cause for a
rehearing." The factual findings of the Commissioner must be
treated as conclusive if "supported by substantial evidence."
*Id.* Review is "limited to determining whether the ALJ used the
proper legal standards and found facts upon the proper quantum of
evidence." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st
Cir. 2000); *see also Seavey*, 276 F.3d at 9.

Substantial evidence exists where, "'a reasonable mind,

12

reviewing the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion.'" *Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)); *see also Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir. 1998) ("Substantial evidence . . . means evidence reasonably sufficient to support a conclusion."). In contrast, the court is not bound by factual findings that are "derived by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

## III. ANALYSIS

Plaintiff argues that the ALJ erred in his decision by (a) improperly rejecting Plaintiff's claims of disabling pain and functional limitation, Pl.'s Mem. at 7-9; (b) improperly relying on the assessment of a nonexamining physician, *id.* at 10-11; and (c) improperly relying on the Medical-Vocational Guidelines. *Id.* at 11-12. I will address each argument in turn.

### A.  *Plaintiff's Claims of Pain and Functional Limitation*

Plaintiff first contends that the ALJ erroneously assessed her claims of pain and functional limitation. She argues that his decision mischaracterizes the evidence and fails to apply the factors set out in *Avery v. Sec'y of Health & Human Servs.*, 797 F.2d 19 (1st Cir. 1986), for examining the severity of a

claimant's pain symptoms.  Plaintiff specifically challenges the ALJ's characterization of her use of medication, his reliance on Plaintiff's refusal to undergo further surgery, and his characterization of her ability to perform daily activities.

The applicable regulations set out a two-step process for evaluating a claimant's allegations of disabling symptoms. First, the ALJ must determine whether the symptom, such as pain, is associated with a "medically determinable impairment that could reasonably expected to produce" the symptoms, shown by "medical signs and laboratory findings."  20 C.F.R. § 416.929(b); *see also* 42 U.S.C. § 423(d)(5)(A) (stating that a claim of disabling pain must be supported by "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques"); SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996).  After it is determined that the medical signs or laboratory findinAugust 26, 2011gs demonstrate the existence of an impairment, the ALJ must "evaluate the intensity and persistence" of the symptoms to ascertain their effect on the claimant's capacity to work.  20 C.F.R. § 416.929(c)(1).

When the severity of the symptoms cannot be shown by objective medical evidence, the ALJ must consider the entire record to evaluate the level of limitation.  42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 416.929(c)(3).  Factors relevant to the consideration of symptoms include:

14

(I) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

*Id.*

District Courts in the First Circuit follow the *Avery* standard for evaluating claims of disabling pain. *See, e.g.*, *Brown v. Astrue*, 2011 WL 3421556, at *6-7 (D. Mass. Aug. 3, 2011); *Resendes v. Astrue*, — F.Supp.2d —, 2011 WL 669090, at *14-15 (D. Mass. Feb. 17, 2011). In *Avery*, the First Circuit adopted the standard for evaluating pain which had been published in the Social Security Administration's Program Operations Manual System (POMS) DI T00401.570 (1985). *Avery*, 797 F.2d at 26. The *Avery* factors are similar to those set out in the regulations and require an ALJ to consider:

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain; 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication; 4. Treatment, other than medication, for relief of pain; 5. Functional restrictions; and 6. The claimant's daily activities.

*Id.* at 29 (quoting POMS DI T00401.570). As a part of evaluating

these factors and the intensity of claimant's pain, an ALJ must consider the credibility of a claimant's statements in light of the "entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In his decision, the ALJ did not explicitly list the *Avery* factors or the factors found in the regulations. ALJ Decision at 4-6. However, he did discuss all facts in the record which touch upon these factors, and his decision makes clear that he considered them along with the entire record. In particular, his consideration of Plaintiff's medication, refusal to undergo surgery, and activities of daily life were consistent with these principles as explained below.

The ALJ's findings and use of the evidence are largely supported by substantial evidence, and he gave specific reasons for discrediting Plaintiff's claims of pain. However, as discussed *infra* in Section III.A.4, his omission in the RFC of limitations on Plaintiff's handling abilities is not supported by substantial evidence and must be reexamined on remand.

### 1. Characterization of Use of Medication

Plaintiff first argues that the ALJ erred in stating that she uses only ibuprofen and ice. She notes that she has also taken various prescription NSAIDs and has experienced the side-effect of gastric distress. Contrary to Plaintiff's assertions,

the ALJ took into account both the use of prescription NSAIDs and the side effects of her medications. The ALJ observed that Plaintiff "takes medication, which causes stomach irritation," ALJ Decision at 4, and that Dr. Leitzes's notes indicated Plaintiff's occasional use Clinoril (Sulindac), a prescription NSAID. *Id.* at 5.

Plaintiff points to a separate part of the decision which provides: "Dr. Bird's assessment of the claimant's worsening and disabling condition is inconsistent with the claimant's limited treatment of pain with Ibuprofen and icing of the problematic region." *Id.* Plaintiff objects to this characterization because she took drugs besides ibuprofen for pain relief. The ALJ's observation, however, is consistent with the record. During certain periods of her treatment with Dr. Bird, Plaintiff was apparently only taking ibuprofen, and not other drugs, for relief of her pain. *See* A.R. 186 (noting medications taken on Oct. 27, 2006); A.R. 189 (same on Feb. 2, 2007). In addition, Plaintiff indicated on a questionnaire that she only took ibuprofen for pain relief. Questionnaire on Pain, A.R. 87 (Nov. 3, 2007). For these reasons, the ALJ's characterization of Plaintiff's pain management is supported by substantial evidence.

## 2. Refusal of Surgical Procedure

Plaintiff's second objection to the ALJ's evaluation of her pain relates to his reliance on her refusal to undergo the

17

surgery recommended for treatment of her hand.  The ALJ observed
that Plaintiff had undergone two prior surgeries on her wrist and
one on her elbow, but that she decided to forego a further
surgery recommended to address pain in the middle finger of her
right hand.  ALJ Decision at 4, 6.  The ALJ concluded that this
decision "indicates that her symptoms are not as severe as
alleged."  *Id.* at 6.  Even though the surgery was estimated to
have only a 60% chance of improving Plaintiff's condition, the
recommendation and decision form a part of Plaintiff's treatment
history.  The ALJ may therefore consider it, together with the
record as a whole, in his evaluation of Plaintiff's credibility
and the intensity of her symptoms of pain.[2]

### 3.  Activities of Daily Living

Plaintiff's third objection to the ALJ's analysis of her
functional limitation relates to the observation in the decision
that she is "able to live with the pain."  (ALJ Decision at 6).
Plaintiff argues that this assessment contradicts the evidence of

---

[2]  The ALJ did not rely on the regulations at 20 C.F.R. §
416.930 to deny Plaintiff's claim.  That provision provides that,
in order to receive SSI benefits, a claimant "must follow
treatment prescribed by your physician if this treatment can
restore your ability to work."  *Id.* § 416.930(a).  The ALJ made
no specific finding that the surgery could restore Plaintiff's
ability to work, nor did he examine whether Plaintiff had a good
reason for foregoing the surgery that would justify the refusal.
*Id.* § 416.930(c); *see Schena v. Sec'y of Health & Human Servs.*,
635 F.2d 15 (1980) (analyzing a similar provision related to
Social Security Disability Income).  Rather, he considered the
recommendation and Plaintiff's reluctance to undergo surgery as
evidence of her level of pain.  ALJ Decision at 6.

her activities of daily living. However, this statement did not
relate directly to Plaintiff's activities of daily living, but
rather addressed Plaintiff's tolerance for the pain while using
ibuprofen and treating with ice. The ALJ stated, in full, that
"[e]ven though the claimant testified that her stomach is
irritated by medications, it is noted that she is able to live
with the pain in her wrist and elbow using only Ibuprofen and
icing for relief." ALJ Decision at 6. This observation is
supported by the fact that, at certain times, Plaintiff used
ibuprofen for her pain management, as noted *supra* Section
III.A.2.

Elsewhere in the decision, the ALJ describes Plaintiff's
claims with respect to activities of daily living as follows:

> She described a typical day involving staying home with
> her children, who cook and do the housework. She
> stated that she attends church, sometimes watches
> television, and attends 'feast days'. She claimed that
> she can drive but does not drive much because she has
> problems holding her hand up for long periods of time.
> She testified that she is unable to lift and carry
> objects, can slowly walk approximately half a mile,
> stand for half an hour, and sit approximately for an
> hour. She sleeps for about 5 hours per night using
> sleeping pills but wakes up to take her pain
> medication.

*Id.* at 4. This summary of Plaintiff's purported activities of
daily living is consistent with the record and the description
provided by Plaintiff herself. Notwithstanding the consideration
of Plaintiff's daily activities, the ALJ concluded that
Plaintiff's claims as to the severity of her pain were not

credible, in large part because of the limited treatment of her symptoms evidenced by the record. This conclusion is supported by substantial evidence.

### 4. Omission of "Handling" Limitation

Before addressing Plaintiff's arguments with respect to the ALJ's reliance on the assessments of nonexamining physicians and his use of the Medical-Vocational Guidelines, I turn to the substance of the Plaintiff's RFC as ascertained by the ALJ. Although I do not find error with the ALJ's consideration of such evidence as he addressed in reaching his conclusion, a glaring omission exists in his determination of the nonexertional limitations resulting from Plaintiff's condition. In particular, the RFC does not include limitations in handling (gross manipulation), even though both Dr. Scolnick and Dr. Manuelian found that she is limited in her ability to handle. A.R. 164, 172. Their finding is supported by the examination notes of Dr. Bird, *see, e.g.*, A.R. 182, and Dr. Leitzes, A.R. 160 ("Grip strength is considerably weaker . . . ."), and the ALJ provides no justification for failing to address this limitation.

I find that the decision to omit this limitation is not supported by substantial evidence because there is no opinion or other basis in the record for concluding that Plaintiff does not have limitations in handling with her right hand. The ALJ inexplicably omitted this limitation from his assessment of the

RFC. Accordingly, I will remand the decision to the ALJ for further explanation of his reasoning or amendment of his conclusion.

## B. Reliance on Assessments by Non-Examining Physicians

The ALJ gave "great weight" to the assessment of Dr. Manuelian and "less weight" to Dr. Bird's assessment. ALJ Decision at 6. Plaintiff argues that the ALJ's reliance on the opinion of the nonexamining physician, who merely reviewed the record for Massachusetts' Disability Determination Services, over her treating physician was an error.

With respect to Dr. Bird's opinion that Plaintiff is totally disabled and unable to work, the ALJ noted that this conclusion was inconsistent with Dr. Bird's treatment of Plaintiff "with very conservative methods, indicating that the level of pain was not as disabling as he opined." ALJ Decision at 6. In addition, the ALJ noted that the determination of Plaintiff's disability is one properly left to the Commissioner, and that Dr. Bird's original opinion related to an assessment for a worker's compensation claim. *Id.* at 5-6.

With respect to Dr. Manuelian's review, the ALJ observed that:

> [H]e has the requisite knowledge of the disability program which enables him to make judgments with regard to the claimant's symptoms and allegations of disabling limitations. Dr. Manuelian had the opportunity to review the entire record and assess whether the claimant's condition improved or she learned to better

21

manage her pain.  Moreover, the additional medical
records submitted prior to the hearing do not provide
convincing evidence to support the appeal.

*Id.* at 6.

I find that the ALJ weighed the two medical opinions in
accordance with the regulations for considering such evidence.
*See* 20 C.F.R. 416.927.  Those regulations provide that an ALJ
must consider the following factors in weighing medical opinions:
(1) existence of examining relationship with claimant; (2)
existence of a treatment relationship with claimant; (3) support
by relevant evidence; (4) consistency with the record as a whole;
(5) specialization in the relevant medical issues; and (6) other
factors, including the physician's understanding of disability
programs and their requirements.  *Id.* § 416.927(d).

With respect to the opinion of a treating physician,
"[g]enerally [the ALJ] give[s] more weight to opinions from . . .
treating sources, since these sources are likely to be the
medical professionals most able to provide a detailed,
longitudinal picture of . . . medical impairment(s)."  *Id.* §
416.927(d)(2).  A treating source opinion is given "controlling
weight" if the opinion "is well-supported by medically acceptable
clinical and laboratory diagnostic techniques and is not
inconsistent with the other substantial evidence" in the record.
*Id.*  If the treating source opinion is not given controlling
weight, then the ALJ must consider the other factors (i.e.,

supportability, consistency, specialization, and other factors)
as well as the length of the treatment relationship and the
nature and extent of that relationship. *Id.* The medical
opinions of nonexamining sources, such as Dr. Manuelian, are
evaluated under the same factors as examining sources. *Id.* §
416.927(f).

I find that there is substantial evidence supporting the
ALJ's conclusion that Dr. Bird's statements as to Plaintiff's
disability should be afforded less weight than the opinion of Dr.
Manuelian, even though Dr. Bird was Plaintiff's treating
physician and Dr. Manuelian is a nonexamining source. The ALJ
primarily cites Plaintiff's treatment history, and in particular
her management of pain, to explain why he credits Dr. Manuelian's
opinion over Dr. Bird, but he also relies on the consistency of
Dr. Manuelian's opinion with that of Dr. Scolnick, the physician
who first reviewed the claim for Disability Determination
Services, as well as Dr. Manuelian's familiarity with the Social
Security Administration's disability program. ALJ Decision at 5-
6; *see* 20 C.F.R. § 416.927(d)(6) (including familiarity with
disability programs as a possible additional factor in evaluating
medical opinion evidence). After reviewing the record as a
whole, I find that it is adequate to support the ALJ's
conclusions with respect to the relative weight of medical
opinion evidence.

## D. *Reliance on Medical-Vocational Guidelines*

The final issue raised by Plaintiff is the ALJ's reliance on the Medical-Vocational Guidelines for determining whether there are jobs in significant numbers in the national economy that she can perform. In part because I find that the ALJ must reexamine his assessment of Plaintiff's RFC, I also find that it is necessary for him to reconsider his reliance on the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, appx. 2, (the "Grid").

The Grid provides rules for determining whether jobs exist in the national economy for individuals of varying exertional ability, age, education, and work experience. *Id.* The Grid is based on data about the existence of different categories of jobs. 20 C.F.R. § 416.969. The rules relate only to exertional limitations, and do not incorporate nonexertional[3] limitations claimants may experience. *Id.* § 416.969a(b)(2). When a claimant

---

[3] The Social Security Administration considers a claimant to have "only exertional limitations" "[w]hen the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect only your ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing and pulling." 20 C.F.R. § 416.969a(b). When an impairment affects a claimant's ability to meet the non-strength demands of a job, those are considered "nonexertional restrictions." *Id.* § 416.969a(c). Examples of nonexertional limitations include difficulty functioning because of mental impairments, difficulty seeing and hearing, and "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." *Id.*

has both exertional and nonexertional limitations, such as limitations in the ability to manipulate objects with hands, the Social Security Administration "will not directly apply the rules in appendix 2 unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations; otherwise the rules provide a framework to guide our decision." *Id.* § 416.969a(d).

The ALJ determined that Plaintiff had an ability to perform light work with certain additional exertional and nonexertional limitations. ALJ Decision at 10. "Light work" is defined in 20 C.F.R. § 416.967(b) as work that:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

The ALJ found that, although Plaintiff could perform light work, she was unable to push or pull, had certain postural limitations, and was limited in her ability to finger and feel with her right hand. ALJ Decision at 10. In addition, as noted *supra* Section III.A.4, Plaintiff may be limited in her ability to handle with her right hand. The ALJ concluded that the "additional limitations have little or no effect on the occupational base of unskilled light work," and he therefore

relied on Rule 202.18[4] on the Grid to conclude that Plaintiff is "not disabled."

The First Circuit has held that "[t]he question whether the Secretary may rely on the Grid" when a claimant has both exertional and nonexertional limitations "depends on whether claimant's nonexertional impairment 'significantly affects [a] claimant's ability to perform the full range of jobs' at the appropriate strength level." *Heggarty v. Sullivan*, 947 F.2d 990, 996 (1st Cir. 1991) (per curiam) (quoting *Lugo v. Sec'y of Health & Human Servs.*, 794 F.2d 14, 17 (1st Cir. 1986) (per curiam)). In cases where "the occupational base is significantly limited by a nonexertional impairment, the Secretary may not rely on the Grid to carry the burden of proving that there are other jobs that they claimant can do." *Id.; see also Seavey*, 276 F.3d at 10 & n.9. In order to address this question, the testimony of a vocational expert will usually be required. *Id.* In contrast, in cases where a severe nonexertional impairment only reduces the occupational base marginally, reliance on the grid would be appropriate. *Id.*

Plaintiff's limitations may have a significant effect on her

_____

[4] The ALJ's reference to Rule 202.18 is in error. That rule applies to a "younger" individual who is literate and able to communicate in English and who previously engaged in skilled or semi-skilled work, but whose skills are not transferable. Because the ALJ determined that Plaintiff is illiterate and unable to communicate in English, ALJ Decision at 7, the applicable rule is 202.16. 20 C.F.R. pt. 404, subpt. P, appx. 2.

occupational base for three main reasons. First, the definition of "light work" indicates that an individual must be able to push and pull arm and leg controls in order to perform the full range of light work. 20 C.F.R. § 416.967(b). Because Plaintiff is unable to push or pull, she would be unable to perform the full range of light work, even before her nonexertional limitations are considered. Second, the Social Security Administration's Program Policy Statement ("PPS") No. 119, SSR 85-15, 1985 WL 56857 (S.S.A. 1985), indicates that "[r]eaching . . . and handling (seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs," and as a result, "[s]ignificant limitations of reaching or handling . . . may eliminate a large number of occupations a person could otherwise do." *Id.* at *7. Plaintiff may have limitations in handling with her right hand (which is her dominant hand), and so her occupational base would be further limited. Finally, Plaintiff's limitation in "fingering" would inhibit her ability "to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion," *id.*, again further narrowing the occupational base.

It is clear from the range of activity categorized as "light work" and the guidance provided by Policy Statement No. 119 that Plaintiff's limitations in pushing and pulling, fingering and,

potentially, handling, would likely have a significant impact on her occupational base.  As a result, the ALJ's reliance solely on the Grid failed to satisfy the Commissioner's burden of coming forward with evidence of the existence of jobs Plaintiff is able to perform.  I will remand for further consideration and fact-finding consistent with the Social Security Administration's guidance and the relevant case law.

IV. CONCLUSION

For the reasons explained herein, I DENY Defendant's motion for an order affirming the decision (Dkt. No. 20).  I GRANT in part Plaintiff's motion (Dkt. No. 15) to the extent that the Commissioner's decision is VACATED and REMANDED for further development of the record, a new administrative hearing, and any further proceedings consistent with this proceeding that may be deemed necessary.


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE